UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **BOBBY HOWZE,** | } |
| | } |
| Plaintiff, | } |
| | } |
| v. | } Case No.: 7:14-CV-01407-RDP |
| | } |
| **WESTERN EXPRESS, INC.,** | } |
| | } |
| Defendant. | } |

## MEMORANDUM OPINION

### I.    Introduction

This case involves an allegation by Plaintiff Bobby Howze that his motorcycle was run-off the road by a tractor trailer operated by one of Defendant Western Express, Inc.'s drivers, causing him to sustain injuries. In his complaint, Howze claimed that Defendant's driver was negligent and wanton and that Defendant was also negligent and wanton in (1) entrusting the employee-truck driver with the vehicle and (2) hiring, failing to adequately train, and/or supervising the employee-truck driver. (Doc. # 1-1). Defendant contends Plaintiff's claims fail because Plaintiff is unable to identify one of its trucks as being responsible for the accident.

This case is before the court on Defendant's Motion for Summary Judgment (Doc. # 23), filed November 23, 2015. The Motion is fully briefed and supported by the parties' evidentiary submissions. (Docs. # 23, 24, 25, 26). After careful review, and for the following reasons, the court concludes that Defendant's Motion for Summary Judgment is due to be granted in part and denied in part.

## II.     Relevant Undisputed Facts[1]

On May 14, 2013, at approximately 1:50 p.m., Plaintiff was traveling on Interstate 20/59 East between County Road 208 and County Road 167 in Greene County. (Doc. # 25-2 at p. 1; Doc. # 25-3 at p. 1). Plaintiff was driving his motorcycle from Mississippi to his home in Atlanta, Georgia by motorcycle—a 1988 Honda GL 500 Gold Wing cruiser. (Doc. # 23-2 at pp. 29, 126, 129, 131).

Just before the accident at issue, Plaintiff was driving in the left-hand or passing lane. (Doc. # 23-2 at p. 167). He was traveling at approximately 65-70 miles per hour in a 70 mile per hour zone while passing an 18-wheeler tractor trailer. (*Id.* at pp. 166, 168-69). Plaintiff maintained his same speed as he passed the tractor trailer. (*Id.* at pp. 177-78). As Plaintiff passed it, he did not notice writing or markings on the tractor trailer's side. (*Id.* at pp. 123, 175).

When Plaintiff passed the tractor trailer, it drifted into the right-side of the road, over the fog line and into the cut grooves in the pavement. (Doc. # 23-2 at pp. 166, 178-79). The tractor trailer operator tractor trailer over-corrected, and in doing so drifted back left across the middle lanes and into the far-left lane in which Plaintiff was traveling. (*Id.* at pp. 166, 180). In order to avoid contact with the trailer portion of the 18-wheeler, Plaintiff steered left and claims he was forced off the road and into the median. (*Id.* at pp. 166, 182-85). The tractor trailer did not make contact with Plaintiff. (*Id.* at pp. 123, 183-85). After Plaintiff crashed into the median, he never saw the tractor trailer again. (*Id.* at p. 188). Plaintiff cannot say whether or not the driver of the tractor trailer ever saw Plaintiff's motorcycle. (*Id.*).

---

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only. They may not be the actual facts that could be established through live testimony at trial. *See Cox v. Admr. U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

Plaintiff admits his memory of the events surrounding the accident is "sketchy." (Doc. # 23-2 at p. 126). He is only able to identify the "non-contact" vehicle as a white, 18-wheeler tractor trailer, but he could not identify any distinguishing characteristics about the tractor trailer, including unique marks. (*Id.* at pp. 123, 125). He is also unable to determine whether the driver had any distinguishing characteristics, including race, gender, style of dress, eyewear, or headwear. (*Id.* at p. 125). Plaintiff further admits that he has no personal knowledge of the identity of the tractor trailer, the company that operated the tractor trailer, or the driver of the tractor trailer. (*Id.* at p. 188). Plaintiff concedes he has no information himself supporting any claim that it was one of Defendant's trucks involved in the accident. (*Id.* at p. 204). Additionally, Plaintiff never spoke with law enforcement about the possibility of filing charges against any trucking company or driver involved with the accident, nor did he discuss with anyone the possibility of filing charges against any driver or company. (*Id.* at pp. 207-08). Plaintiff has no video, photographs, or any other demonstrable evidence that shows that Defendant was in fact operating the tractor trailer involved in the accident or had a tractor trailer in the area at the time of the accident. (*Id.* at pp. 220, 224). And, Plaintiff made no effort to determine or confirm the identity of the tractor trailer, and has not personally communicated with Defendant. (*Id.* at pp. 224-27). If the only information in the Rule 56 file was Plaintiff's testimony, his claims against Defendant would be subject to dismissal.

However, there is, in fact, more evidence in the summary judgment record. Although Plaintiff had no knowledge of the identity of the tractor trailer or its driver, he retained legal counsel to investigate the identity of the tractor trailer and its driver. (Doc. # 25-1). The accident report does not list witnesses to the accident, and Plaintiff never contacted the trooper or trooper's office to amend the report (Doc. # 23-2 at pp. 208-209); however, the investigation

conducted by Plaintiff's legal counsel uncovered an eyewitness – Ira Tate Cole. (*Id.* at p. 206; Doc. # 25-1; Doc. # 25-2, Attachments 1 & 2). Cole has worked as a truck driver since 1991 and is a resident of Douglasville, Georgia. (Doc. # 23-3 at pp. 4-5). He was operating a tractor trailer on I-20/59 East, driving from Mississippi to Marietta, Georgia (the same direction Plaintiff and the truck at issue were traveling), when he witnessed the accident. (*Id.* at pp. 5-6, 9).

On July 7, 2013, Plaintiff's counsel obtained two affidavits from Cole regarding his eyewitness account of the accident. (Doc. # 23-12; Doc. # 23-13). In some respects, the statements in the affidavits are similar; in others, they are different. Attached to one of the affidavits was a photograph of what appeared to be one of Defendant's tractor trailers bearing the "Western Express" logo. (Doc. # 23-3 at p. 18; Doc. # 23-12). The other affidavit did not include that photo or any other attachments. (Doc. # 23-13). Cole could not recall which affidavit he signed first, but acknowledged that he signed them both. (Doc. # 23-3 at pp. 43-44). When deposed he only remembered the affidavit with the photograph. (*Id.* at pp. 45-46).

Cole admitted at his deposition that the photograph was provided to him and that he did not take it himself. (Doc. # 23-3 at p. 46). He acknowledged that the tractor trailer bearing a "Western Express" logo in the photo *resembled* the tractor trailer that caused the accident. (*Id.* at p. 18). In addition, he testified that the "Western Express" logo in the photograph was *the same* as the one he saw on the tractor trailer. (*Id.*). Cole admitted that he could not say that the "Western Express" logo in the photograph was the particular one he saw on the date of the accident. (*Id.* at p. 47). He testified that if he said the "Western Express" decal in the photograph is the same as the one he saw on the tractor trailer the day of the accident, he would be guessing. (*Id.*). However, Cole's affidavit with the photo states that he saw a logo bearing the words

4

"Western Express" and that the logo on the tractor trailer in the photograph is "similar" to the one he saw. (Doc. # 23-12).

Cole acknowledged that Plaintiff's attorney did not show him photographs of other trucks belonging to Defendant or of tractor trailers belonging to other companies with substantially similar names. (Doc. # 23-3 at pp. 46-47). He confessed that if he was given multiple photographs of other types of trucks with the name "Western Express" on them he may be unable to pick out any particular one to be the truck he saw at the accident. (*Id.* at p. 47). Additionally, he admitted he could not say whether the subject truck was one operated by Defendant or a vehicle operated by some other trucking company with the same or similar name. (*Id.* at p. 49). Cole is familiar with Defendant's trucks and the "Western Express" logo. (*Id.* at p. 19). He conceded that he failed to call Defendant (or any other company named "Western Express") to give notice that one of their tractor trailers had been involved in an accident. (*Id.* at pp. 49-50). When pressed as to whether he had not done so because he would not know which company to call, Cole stated that "[i]t wasn't my responsibility." (*Id.* at p. 50).

Cole testified that nothing blocked his view of the tractor trailer as it passed him. (Doc. # 23-3 at pp. 48-49). Nothing prevented him from seeing the color of the tractor or trailer, the tag on the rear, or any numbers, decals, writings, or emblems on the trailer's side. (*Id.* at pp. 93-94). Cole was unable to remember any details about the appearance of the tractor trailer. (*Id.* at p. 40). Specifically, he could not remember the color of the trailer or tractor, details concerning the license plate, a description of the mud flaps, the driver's appearance, markings on the truck as it passed, or logos, emblems or symbols. (*Id.* at pp. 39-41). He testified that he never saw any numbers on the back of the trailer; he was only able to recall that the "Western Express" logo was on the back of the trailer. (*Id.* at p. 48).

Cole believed that the tractor trailer was traveling at 65-68 miles per hour as it passed him on the interstate. (*Id.* at pp. 39). Similarly, Cole estimated that Plaintiff was also going 65-68 miles per hour on his motorcycle. (Doc. # 23-3 at p. 63). He stated that the accident occurred while Plaintiff was passing the tractor trailer in the left-hand lane. (*Id.* at p. 70). Cole described the accident as follows: the tractor trailer was traveling in its lane, crossed over the indentions in the emergency shoulder, crossed over the full width of the shoulder with the passenger side tire off the paved shoulder and into the grass, turned back left to get onto the road, and "overcorrected." (*Id.* at pp. 66-68). The overcorrection resulted in the trailer's dual wheels going completely into the left lane, causing the trailer to lean and the motorcycle (which was at the mid-point of the tractor trailer) to go off the road and into the median. (*Id.* at pp. 68-70). Cole "thought [the tractor trailer] hit the motorcycle rider on the shoulder." (*Id.* at p. 69).

Cole cannot say with certainty that the driver of the truck realized there was an accident. (Doc. # 23-3 at p. 72). But, according to Cole, the driver "appeared" to realize the motorcycle had crashed because the truck turned on its four-way flashers and pulled toward the right shoulder like it was coming to a stop. (*Id.* at pp. 72-74). Suddenly, the truck pulled back onto the road and left the scene. (*Id.* at p. 73). It was only after the tractor trailer was approximately 200 to 250 feet from Cole that he noticed the "Western Express" decal. (*Id.* at pp. 75-77).

A "few minutes" after the accident occurred, Cole called Greene County 911 to report the accident. (Doc. # 23-3 at pp. 32, 50; Doc. # 25-2). He first pulled his truck off the road and stopped. (Doc. # 23-3 at pp. 30-32). During the 911 call, Cole reported that a "Western Express" tractor trailer had run a motorcycle off the road. (Doc. # 25-2).

A representative for Defendant, Executive Vice President Clarence Easterday, testified about Defendant's tractor trailers at his deposition. (Doc. # 23-4 at p. 5). He stated that on any

6

given day, approximately 88% to 89% of the approximately 2,300 power units Defendant owns would be in operation. (*Id.* at pp. 8-9). Defendant also has approximately 5,500 to 6,000 trailers of all types. (*Id.* at pp. 7-8). At the time of the accident, Defendant owned all of the power units that it operated. (*Id.*). Also at the time of the accident, Defendant had GPS devices and services, including two-way communication, on every power unit in operation. (Doc. # 23-6 at pp. 22-23). In May 2013, Defendant's policy was to retain GPS information for six months (the same amount of time that Federal Regulations required it to keep logs). (*Id.* at pp. 21-22).

Defendant learned of the accident when Easterday or his staff received a July 12, 2013 letter from Plaintiff's attorney letter, which included a notice of preservation of records. (Doc. # 23-4 at pp. 9-10; Doc. # 25-1). Upon receiving that letter, Defendant conducted an investigation including reviewing call records and GPS data and determined that it did not have any vehicles "in the area" at the time of the accident. (Doc. # 23-5 at pp. 10-13). Defendant did not save those GPS data search parameters. (*Id.* at pp. 13, 20). Easterday testified that Defendant had recently (*i.e.*, on October 19, 2015—ten days prior to his deposition) checked the GPS data again. (*Id.* at p. 20; Doc. # 23-6 at p. 21; *see* Doc. # 23-9 at pp. 4-5 (GPS data)). In that October 19, 2015 search, Defendant first used the longitude and latitude coordinates noted in the accident report to determine whether any of its tractor trailers had been in the accident area. (Doc. # 23-6 at pp. 24-25). It also ran a broader search within a 25-mile radius of both the accident and the nearest city, within a time frame of three hours before and three hours after the accident (10:50 a.m. CDT until 4:50 p.m. CDT). (*Id.* at pp. 21, 24). Easterday testified that the search showed that Defendant did not have any equipment traveling on I-20/59 within a 25-mile radius of the accident during the six-hour period surrounding the accident. (*Id.* at pp. 21, 25; *see* Doc. # 23-9 at pp. 4-5).

Easterday acknowledged that he did not save the July 2013 search parameters (Doc. # 23-5 at p. 13); rather, he claims that the GPS data collected on October 19, 2015, would have been the same data he would expect to collect at the time the company first learned of the accident (in July 2013). (Doc. # 23-7 at p. 34). According to Easterday, this is the case because, in the course of discovery which was conducted in a separate and unrelated lawsuit, Defendant discovered it had backup tapes of GPS data from the time of the accident. (Doc. # 23-6 at pp. 23-24). After making that discovery, Defendant was able to conduct the same search it would have performed on October 19, 2015. (*Id.*). Easterday also claimed that the GPS data is accurate because he knows Defendant used the same data in another legal matter. (Doc. # 23-7 at pp. 34-35).

There are many trucking companies registered in the United States with the name "Western Express" or some combination of those words in their registered names. (Docs. # 23-6 at p. 30, 23-7 at p. 31). However, Easterday admitted that he is unaware of any other companies or motor carriers in Alabama that operate under the name "Western Express." (Doc. # 23-7 at pp. 31). Easterday testified that although the logo in the photograph attached to the Cole affidavit looks like the "Western Express" logo belonging to Defendant, he could not say with certainty whether it belonged to Defendant without tracing the trailer's number. (Doc. # 23-6 at p. 26-30). Defendant has unit numbers conspicuously placed on the back of its equipment. (*Id.*). However, Easterday did testify that the logo in the photograph *appeared* to be Defendant's logo, and based on the number on the back of the trailer it *appeared* to be Defendant's trailer. (*Id.* at p. 26).

### III. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56(c) requires the non-moving party to go beyond the pleadings and – by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file – designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("*Anderson*").  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. For Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997).  As *Anderson v. Liberty Lobby, Inc.*, teaches, under Rule 56(c) a plaintiff may not simply rest on her allegations made in the complaint; instead, as the party bearing the burden of proof at trial, she must come forward with at least some evidence to support each element essential to her case at trial. *See Anderson*, 477 U.S. at 252.  "[A] party opposing a properly supported motion for summary

judgment 'may not rest upon the mere allegations or denials of [her] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248 (citations omitted).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Southwest Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Sawyer*, 243 F. Supp. 2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

## IV. Analysis

After careful review, the court concludes that there is a genuine dispute as to the identity of the tractor trailer, and Plaintiff has provided sufficient evidence to avoid the swing of the summary judgment axe.

### A. There is a Genuine Dispute of Material Fact as to the Identity of the Tractor Trailer

In litigating this motion, Plaintiff and Defendant have placed in the summary judgment record conflicting evidence as to the identity of the subject tractor trailer. When viewed in the

light most favorable to Plaintiff, a reasonable jury could find that the truck involved in the accident with Plaintiff was operated by Western. The court addresses Defendant's arguments to the contrary below.

### 1. Cole's 911 Phone Call is a Present Sense Impression and is Therefore Falls with an Exception to the Hearsay Rule

Defendant initially argues that Cole's phone call to Green County 911 cannot be considered in connection with its motion because it is inadmissible hearsay. The court disagrees. Under the facts viewed in their most favorable light for Plaintiff, testimony about the call is admissible as a present sense impression.

A hearsay statement is an out-of-court declaration which a party offers as evidence "to prove the truth of the matter asserted." Fed. R. Evid. 801(c)(1)-(2). Hearsay is generally inadmissible unless an exception or exclusion is found to apply. Fed. R. Evid. 802. At issue here are two possible exceptions to inadmissible hearsay: present sense impression and excited utterance. Fed. R. Evid. 803(1)-(2).

A present sense impression is a statement "describing or explaining an event or condition, made while or immediately after the declarant perceived it." Fed. R. Evid. 803(1). As the Eleventh Circuit has explained, the "substantial contemporaneity of the event and the statement negate the likelihood of deliberate or conscious misrepresentation." *United States v. Holmes*, 498 F. App'x 923, 924 (11th Cir. 2012) (citing *United States v. Scrima*, 819 F.2d 996, 1000 (11th Cir. 1987)). An excited utterance is a statement "relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Fed. R. Evid. 803(2). The statement need not be made at the precise time of the startling event to qualify as a present sense impression; rather, courts consider the totality of the circumstances in determining whether the declarant was still experiencing stress or excitement caused by the startling event at the time the

11

statement was made. *See Holmes*, 498 F. App'x at 924-24 (citing *United States v. Belfast*, 611 F.3d 783, 817 (11th Cir. 2010)).

As the Supreme Court has noted, recorded 911 calls that would otherwise be inadmissible hearsay have often been admitted on grounds of both present sense impressions and excited utterances. *Navarette v. California*, 134 S. Ct. 1683, 1689-90 (2014) (discussing also the general veracity of 911 calls). Defendant argues that the 911 call cannot be a present sense impression because the call was not made contemporaneously with the accident (but rather a few minutes following the accident). The court disagrees. In *Navarette*, the Court found the 911 call to be contemporaneous when the "timeline of events suggests that the caller reported the incident *soon after* she was run off the road." *Id.* at 1689 (emphasis added). Additionally, the Eleventh Circuit has held that a store clerk's recorded 911 calls, reporting that an individual possessed a .357 caliber revolver outside the convenience store, were properly admitted into evidence because, even if hearsay, they constituted both a present sense impression and an excited utterance. *Holmes*, 498 F. App'x at 924-25.

Other courts outside the Eleventh Circuit have concluded that 911 calls generally involve present sense impressions or excited utterances. For example, in *United States v. Hawkins*, the Eighth Circuit held that where the defendant's wife called 911 when her husband had pulled a gun on her, and she was able to describe the gun in some detail to support the reliability of her statements, the call was an admissible statement of a present sense impression since the call was placed with "sufficient contemporaneity to the underlying events." 59 F.3d 723, 730 (8th Cir. 1995), *judgment vacated on other grounds*, *Hawkins v. United States*, 516 U.S. 1168 (1996). Similarly, in *United States v. Mejia-Valez*, the district court found that where two 911 calls were made—one 2-3 minutes after the underlying event, and the other 16 minutes after—both calls

were contemporaneous to the underlying event so as to constitute a present sense impression. 855 F. Supp. 607, 613-14 (E.D.N.Y. 1994). Alternatively, that court held that "even if the calls were not significantly contemporaneous" enough to meet the Rule 803(1) standard, they were admissible excited utterances under Rule 803(2). *Id*. at 614.

To be sure, much of the available case law in this area involves criminal proceedings. But the underlying rationale which guides the interpretation of the rule is the same: where statements in 911 calls are made with "substantial contemporaneity" to the underlying event, but not necessarily the same time as or within the very minute after it, the statement is nevertheless admissible as a present sense impression. *Holmes*, 498 F. App'x at 924.

Similar to the facts in *Navarette* and *Holmes*, Cole's 911 call occurred with substantial contemporaneity to the motorcycle accident. *See Navarette*, 134 S. Ct. at 1689-90; *Holmes*, 498 F. App'x at 924. Cole's call came within "a few minutes" after the accident (Doc. # 23-3 at p. 32)—that is, "soon after" Plaintiff went off the road, *Navarette*, 134 S. Ct. at 1689, and there was less of a gap than the sixteen minute one in *Mejia-Velez*. 855 F. Supp. at 614. Further, Cole has testified consistently with the information provided in his 911 call. Because he was able to describe the events of the accident within a period of time that is contemporaneous to the motor vehicle accident, his 911 phone call qualifies as a present sense impressions.[2]

Alternatively, and in any event, the court concludes that the recording of Cole's 911 call is admissible as an excited utterance. The court notes that Defendant has only addressed its hearsay argument in the context of a present sense impression, and has not argued against application of the excited utterance exception. But both these exceptions are frequently applied

---

[2] Iris Sermon's submission of the 911 call is admissible as a public record or business record. Fed. R. Evid. 803(8)(B) and 803(6). *See Lloyds v. Jones*, No. 05-cv-389, 2009 WL 2970503, at *1 (E.D. Tex. Sept. 9, 2009) (citing *United States v. Verlin*, 466 F. Supp. 155, 159 (N.D. Tex. 1979) (finding that "a tape recording of an emergency call kept in the regular course of business satisfies the requirements of the business records exception)).

to 911 calls. *See e.g.*, *Navarette*, 134 S. Ct. at 1689-90; *Holmes*, 498 F. App'x at 925 (upholding court's finding that recorded 911 calls were admissible as both present sense impressions and excited utterances); *see also United States v. Abraham*, 386 F.3d 1033, 1037 (11th Cir. 2004) (recording of 911 call admissible as excited utterance). Other jurisdictions have also ruled on similar facts and concluded that a 911 call constituted an excited utterance. For example, where 911 calls were made during an emergency and for the purpose of summoning police for assistance, those calls have been found to be excited utterances and deemed admissible at trial. *See United States v. Chen Kuo*, No. 10-cr-671, 2011 WL 145471, at *3-7 (E.D.N.Y. Jan. 18, 2011); *United States v. Harper*, No. 05-cr-6068 2009 WL 140125, at *2-3 (W.D.N.Y. Jan. 20, 2009). When looking at the totality of the circumstances, the recording of Cole's 911 call also qualifies as an excited utterance. Cole testified that the brief time passage between the accident and his calling 911 is attributable to him needing to first brake his truck and move to the side of the road. (Doc. # 23-3 at pp. 30-32). Further, utilizing the factors applied by the *Chen Kuo* and *Harper* courts, Cole made the 911 call in order to request aid for Plaintiff (that is, with the express purpose of summoning the police or other emergency vehicles to assist Plaintiff). (*See* Doc. # 23-3 at p. 33). On this record, a trier of fact could also infer that Cole found the call to be necessary when he guessed that the driver of the tractor trailer was not going to stop and he was not sure whether that driver had knowledge of the accident. Thus, the recording of Cole's 911 call is admissible as an excited utterance.

For these reasons, Cole's call made to Greene County 911 was both a present sense impression and an excited utterance and is therefore an exception to inadmissible hearsay. Therefore, the 911 call will not be excluded from the Rule 56 record and will be considered in determining whether summary judgment is appropriate.

### 2. There is Not a Genuine Dispute as to a Material Fact Regarding Plaintiff's Wantonness Claims

In his complaint, Plaintiff asserts various wantonness claims against Defendant: wanton conduct on the part of the tractor trailer driver, wanton conduct on the part of the employer in entrusting the tractor trailer to the driver, and wanton conduct on the part of the employer in hiring the driver, failing to adequately train the driver, and/or in supervising the driver. (Doc. # 1-1). However, in his opposition brief, Plaintiff has conceded that his wantonness claims are due to be dismissed (Doc. # 24 at p. 13). Accordingly, the court need not address those claims here in detail. The wantonness aspects of counts one through three are due to be dismissed.

### 3. There is a Genuine Dispute as to a Material Fact Regarding Plaintiff's Negligence Claims

Defendant argues that Plaintiff's negligence claims are due to be dismissed because Plaintiff has not put forward substantial evidence to show that one of its drivers was operating the tractor trailer in question. After careful analysis the court disagrees. A genuine issue of fact exists regarding the identity of the tractor trailer involved in this accident. It is for a jury to assess the discrepancies between Cole's eyewitness testimony and Western Express's GPS data.

#### a. Because Cole's Credibility is to be Determined by a Jury, there is a Genuine Dispute of Material Fact to be Adjudicated at Trial

In this case, the issue on summary judgment relates to the identification of the tractor trailer involved in the accident. Although Plaintiff himself admittedly cannot identify the truck, he has produced an eyewitness, Cole, who has presented substantial evidence that, if believed by the jury, would show the truck was owned and operated by Defendant. As the Eleventh Circuit has explained:

> When considering a motion for summary judgment, . . . 'courts must construe the facts and draw all inferences in the light most favorable to the nonmoving party and when conflicts arise between the facts evidenced by the parties [they must]

>credit the nonmoving party's version.' *Davis v. Williams,* 451 F.3d 759, 763 (11th Cir. 2006) (quotation marks and emphasis omitted). Even if a district court 'believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices.' *Miller v. Harget*, 458 F.3d 1251, 1256 (11th Cir. 2006). This is because credibility determinations and the weighing of evidence 'are jury functions, not those of a judge.' *Anderson*, 477 U.S. at 255.

*Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013).

Here, Cole called Greene County 911 to report the accident. In that call, he identified the tractor trailer as one operated by Western Express. Defendant points to certain inconsistencies in Cole's account and his inability to identify specific facts and details about the truck. These arguments go to Cole's credibility but it is axiomatic that Cole's credibility[3] cannot be resolved on summary judgment; rather, is to be determined by a jury at trial.[4]

### b.     The Accuracy of Defendant's GPS Evidence is to be Determined by the Jury at Trial

Defendant contends that GPS evidence it has proffered negates Plaintiff's claim that its truck caused the accident at issue in this case. However, Plaintiff has presented substantial

---

[3] The court cannot say that the record blatantly contradicts Cole's testimony. The only evidence Defendant has proffered in response to Plaintiff's claims that it was the company responsible for the tractor trailer at issue is the GPS data about which Easterday. As the court discusses below, the accuracy of that GPS data is also a matter for trial, and, because Defendant is the moving party, the court construes the disputed facts against it, and in favor of Plaintiff. *See Feliciano*, 707 F.3d at 1252.

[4] Defendant also relies upon *Hines v. Trinity Contractors, Inc.*, 154 So. 3d 1014 (Ala. Civ. App. 2014) (*per curiam*), a case involving claims that the defendant's truck negligently caused the plaintiff's car to travel off the road and into the median. *Hines* is distinguishable. There, in addition to eyewitnesses' statements as to the identity of the allegedly negligent truck, the plaintiff averred as to certain identifying features, including possibly the name of the owner. *Hines*, 154 So. 3d at 1022. However, the plaintiff changed her own testimony three years after the accident. *Id.* The court in *Hines* ruled that her testimony contradicted itself without adequate explanation. *Id.* at 1024. Unlike the situation in *Hines*, Cole is not a party and his testimony has remained consistent: he identified the tractor trailer as a "Western Express" vehicle at the time of the accident, and although perhaps wavering in his confidence as to that identification at his deposition, testified in his affidavit and at deposition that the truck was Western's. (Doc. # 23-3; Doc. # 23-12; Doc. # 23-13; Doc. # 25-2). Because Cole's statement on the 911 call identifying the tractor trailer is not contradicted without any adequate explanation in the record, it is not due to be excluded. Additionally, because the issue of the identity of the tractor trailer hinges on Cole's eyewitness statements, and his wavering testimony at deposition goes to his credibility, summary judgment is an inappropriate forum to resolve his credibility. That is to be determined by a jury at trial.

evidence that calls that GPS evidence into question. Because any questions as to accuracy of this evidence must be weighed by a jury, summary judgment would be inappropriate.

Plaintiff has raised substantial questions about the accuracy, authenticity, and reliability of Defendant's GPS evidence. "[T]he accuracy of the actual evidence is to be tested before the jury with the familiar tools of the 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'" *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (quoting *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 596 (1993)). For example, when an expert witness testified that employees were recording time on their timesheets in excess of what a GPS system has recorded, a district court found a dispute as to the accuracy of the expert's findings and conclusions is a material dispute that could not be resolved at summary judgment. *Espenscheid v. DirectSat USA, LLC*, No. 09-cv-625, 2011 WL 10069108, at *15 (W.D. Wis. Apr. 11, 2011). To be sure, in *Espenscheid* the issue turned on whether certain recorded time occurred outside of the vehicles containing GPS—a different issue than the one presented here. Nevertheless, the *Espenscheid* decision demonstrates how a number of questions must be assessed by a trier of fact in addressing GPS data.

Here, although Easterday testified that Defendant's GPS data was used in a separate, unrelated lawsuit, he also admitted that he "typically [does] not" do "that kind of work." (Doc. # 23-6 at p. 21). Moreover, Easterday conceded that the original July 2013 data search was not saved, and the GPS data submitted into the Rule 56 record was a product of a data search conducted approximately twenty-seven months after the accident. On these facts, the court cannot conclusively find, as a matter of law, there is no genuine dispute of material fact. Plaintiff's negligence claim must be sent to a jury.

## V.     Conclusion

For all these reasons, the court concludes that a question of material fact remains concerning whether Defendant was operating the motor vehicle accident. Therefore Defendant's Motion for Summary Judgment (Doc. # 23) as to negligence is due to be denied. However, because Plaintiff does not oppose Defendant's Motion as to wantonness, that portion of the Motion is due to be granted. A separate order will be entered.

**DONE** and **ORDERED** this August 8, 2016.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE